Nicholas J. DiNardo
Supreme Court No. 0069544
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| YOLAUNDA ROBINSON | : | CASE NO. 1:08CV238 |
| Plaintiff, | : | Judge J. BARRETT |
| -vs- | : | |
| CINCINNATI METROPOLITAN HOUSING AUTHORITY | : | MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| Defendant. | : | |
| | : | |

Plaintiff, Yolaunda Robinson, moves for a temporary restraining order and preliminary injunction ordering Defendant to immediately transfer her to another suitable public housing unit pursuant to its current transfer policy. This motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure for the reasons contained in the attached memorandum, exhibits and affidavit.

Respectfully submitted,

/s/ Nicholas J. DiNardo
Nicholas J. DiNardo (0069544)
Lucia Christopher (0081979)
Attorneys for Plaintiff
Legal Aid Society of Southwest Ohio
215 East 9th Street, Suite 500
Cincinnati, Ohio 45202
(513) 241-9400; (513) 241-1187 (fax)

MEMORANDUM IN SUPPORT

I. **INTRODUCTION**

Yolaunda Robinson, is a tenant of the Cincinnati Metropolitan Housing Authority ("CMHA") in a scattered site public housing unit, a single family home located at 8651 DeSoto Drive,

Cincinnati, Ohio ("the premises").[1] Until recently, she lived there with her two children, 18 year old Diontae and 9 year old Alayejah. While she continues to pay rent and utilities for this address, she has been unable to live there since January 14, 2008, after being severely beaten by her ex-boyfriend, Charles E. Davis, Sr. Mr. Davis threatened to kill Ms. Robinson if she returned to the premises. Since that time she has feared for her safety and the safety of her family, and has been staying at other undisclosed locations.

In March of 2007, Ms. Robinson began dating Mr. Davis. A few month later, Mr. Davis and his mother moved just half a block down the street from the premises. From June through December of 2007, Mr. Davis physically abused Ms. Robinson on numerous occasions. He was extremely controlling and paranoid.

On December 25, 2007, Ms. Robinson told Mr. Davis that their relationship was over. He again beat her and tried to stab her with a knife. She returned to the premises, but since she feared for her safety, she left that night and stayed at an undisclosed location for three weeks.

Ms. Robinson returned to the premises on January 14, 2008. A few minutes after she arrived, Mr. Davis came to the premises claiming that he wanted to talk. When she refused to unlock the door, he broke in and assaulted her. Mr. Davis punched her in the head several times, then began beating her in the head with a vacuum cleaner. Mr. Davis threatened to kill her if she ever returned to the premises. She was able to call 911 and Mr. Davis ran away. She filed a police report against him.[2] She was taken to the hospital and required five staples to close the head wound that he caused.[3]

On January 25, 2008, Ms. Robinson petitioned for a Civil Stalking or Sexually Oriented

---

[1] *See* attached Affidavit of Yolaunda Robinson.
[2] *See* Exhibit A.
[3] *See* Exhibit B.

Offense Protection Order against Mr. Davis.[4] She was subsequently granted an *ex parte* Protection Order.[5] On information and belief, criminal charges are pending against Mr. Davis. On February 8, 2008, she received an order continuing the Protection Order through June 4, 2008.[6]

Within a couple of days after the January 14 incident, Ms. Robinson contacted Crystal Stollings, the Assistant Property Manager for CMHA's Scattered Sites West. She requested to be transferred to another unit because of the domestic violence. At first, she was given the impression that she would be eligible for a transfer. She submitted a transfer application and then waited to hear back from CMHA.[7] Ms. Robinson contacted Ms. Stollings several times after submitting the transfer, but was told that it would take a couple of months before they heard anything because the transfer went to an outside office.

About a week later, a social worker from CMHA contacted Ms. Robinson. She told her that she needed to fill out another form. Ms. Robinson immediately completed the form and turned it back in to CMHA.[8] After having several more telephone calls go unanswered, she was notified by Ms. Stollings that her request for a transfer was denied. Ms. Stollings told her that her situation does not qualify for a transfer under CMHA policy. Ms. Robinson received a letter denying the transfer on March 4, 2008.[9]

Ms. Robinson's daughter has been so traumatized by this situation that she will not return to the premises with her, even for a few minutes to check the mail. When Ms. Robinson informed CMHA of this situation, Ms. Stollings told her that "you have to teach her not to be scared and to stand up for ourselves." She has to send her 18 year old son to check the mail every couple of days.

---

[4] *See* Exhibit C.
[5] Hamilton County Common Pleas Court Case No. SK080070; *see* Exhibit D.
[6] *See* Exhibit E.
[7] *See* Exhibit F.
[8] *See* Exhibit G.
[9] *See* Exhibit H.

Ms. Robinson and her counsel contacted CMHA several times after the denial letter, but CMHA refused to change its decision to deny the transfer, in violation of the transfer policy contained in its own Admissions and Continued Occupancy Policy (ACOP),[10] and in violation of federal and Ohio law.

## II. TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD ISSUE

The court should grant Plaintiff's motion for a temporary restraining order and preliminary injunction. Rule 65 of the federal Rules of Civil Procedure provides for preliminary injunctive relief when it clearly appears that immediate and irreparable harm will result to the applicant. In deciding whether to issue a temporary restraining order or preliminary injunction, courts consider four factors: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction.[11] The elements are factors for the court to balance, and each element need not be met in order to issue a preliminary injunction.[12] An analysis of these four factors shows that Ms. Robinson is entitled to a temporary restraining order and preliminary injunction.

### A. Plaintiff has a High Likelihood of Success on the Merits

Ms. Robinson requested a transfer, which CMHA subsequently denied, after the domestic

---

[10] Copy attached as Exhibit I.
[11] *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100 (6th Cir., 1982.); *In re DeLorean* 775 F.2d 1223, 1228 (6th Cir., 1985).
[12] *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474 (6th Cir. 1995); *In re Delorean*, 775 F.2d at 1229.

violence incident. CMHA policy allows tenants to transfer units in many circumstances, including, but not limited to, when the unit "poses an immediate threat to resident life, health or safety"[13] and for "residents who are victims of federal hate crimes or extreme harassment."[14] After requesting the transfer, Ms. Robinson produced all of the documentation that CMHA requested, including the petition and protection order.[15] CMHA then mailed a letter to her stating that "your request does not meet CMHA's guidelines for a transfer."[16]

Ms. Robinson is a domestic violence victim residing in public housing. U.S. government studies have shown that domestic violence overwhelmingly effects women.[17] Female victims of domestic violence often encounter discrimination by their landlords.[18] Housing discrimination against victims of domestic violence forces victims to make a desperate choice between remaining in an unsafe household or risking eviction and/or homelessness.[19]

The federal Fair Housing Act ("FHA"), also known as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination based on sex, race, color, religion, national origin, handicap and familial status.[20] Specifically, the FHA makes it unlawful to "make unavailable or deny, a

---

[13] *See* CMHA ACOP, Exhibit I at B.1., Emergency Transfers.
[14] *Id* at B.2., Category 1 Administrative Transfers.
[15] *See* Exhibits C - G.
[16] *See* Exhibit H.
[17] *See, e.g.* Callie Marie Rennison & Sarah Welchans, U.S. Dept. of Justice, Intimate Partner Violence (2000). 86.6% of violent victimizations committed by intimate partners, 1993-1998, were committed against women. *Id.* at 8. Women were 7.9 times as likely as men to be victims of intimate partner violence within their homes. *Id.* at 2.
[18] *See, e.g.*, Lenora M. Lapidus, Doubly Victimized: Housing Discrimination Against Victims of Domestic Violence, 11 Am. U. J. Gender Soc. Policy & L. 377 (2003) (finding that the problem of women being denied housing opportunities or being evicted from their housing simply because they are victims of domestic violence is widespread); Wendy R. Weiser and Geoff Boehm, Housing Discrimination Against Victims of Domestic Violence, 35 Clearinghouse Rev. 709 (2002).
[19] In December, 2001, the U.S. Conference of Mayors determined that domestic violence is the primary cause of homelessness in eight major cities. Eliza Hirst, Note: The Housing Crisis for Victims of Domestic Violence: Disparate Impact Claims and Other Housing Protections for Victims of Domestic Violence, 10 Geo. J. on Poverty L. & Policy 131 (2003)(Georgetown Journal, p. 1 n. 12).
[20] 42 U.S.C. §§ 3601 *et seq.*

S:\SAH\NJD\Robinson, Y\TRO Motion 040708.wpd                5

dwelling to any person because of . . . sex,"[21] and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex."[22] The Ohio Civil Rights Act similarly forbids this type of discrimination.[23]

Since domestic violence overwhelmingly affects women more than men, it is sex discrimination under federal and Ohio law to treat domestic violence victims differently than other tenants with respect to the terms, conditions and privileges of the tenancy.[24] In *Bouley v. Young-Sabourin*, the court held that the plaintiff had made a *prima facie* case of sex discrimination, establishing that her landlord attempted to evict her based on her status as being a domestic violence victim.[25] After the landlord was denied summary judgment, the case soon settled.[26]

In several other cases, tenants have alleged that their status as domestic violence victims resulted in sex discrimination by their landlords.[27] In *Lewis*, the building owner and management company agreed as part of a Stipulated Order of Dismissal to not discriminate against domestic violence victims and to adopt and implement a domestic violence policy which included a right for victims to transfer or relocate.[28] In *Warren*, a public housing authority just like CMHA, agreed to settle a FHA case brought by a domestic violence victim.[29] The housing authority agreed to no

---

[21] 42 U.S.C. § 3604(a).
[22] 42 U.S.C. § 3604(b).
[23] Ohio Revised Code § 4112.02(H)(1),(4).
[24] *See, e.g.* Eviction, Discrimination, and Domestic Violence: Unfair Housing Practices Against Domestic Violence Survivors, 18 Hastings Women's L.J. 249, 268 (2007)
[25] 394 F.Supp.2d 675, 678 (D. Vt., 2005).
[26] *See* HUD Fair Housing Newsletter, May 2005, http://www.hud.gov/local/shared/working/r10/fhnews0505.cfm?STATE=wa; Copy attached as Exhibit J.
[27] *Lewis v. North End Village*, Case No. 2:07-cv-10757, *unreported* (E.D. Mich. 2007); *Warren v. Ypsilanti Housing Commission*, Case No. 4:02-cv-40034, *unreported* (E.D. Mich. 2003); *Alvera v. C.B.M. Group*, Case No. 01-857, *unreported* (D. Oregon 2001).
[28] Copy of the Order attached as Exhibit K.
[29] Copy of the Settlement Agreement attached as Exhibit L.

longer enforce the no-strike rule against domestic violence victims and also agreed to pay the plaintiff money damages for the stress and humiliation she faced in having to defend against the eviction it filed.[30] In *Alvera*, the parties entered into a consent decree, requiring C.B.M. to not evict, or otherwise discriminate against tenants because they have been victims of violence, including domestic violence.[31]

By refusing to grant Ms. Robinson occupancy rights granted to other tenants, specifically a transfer to a safe location, based on the criminal behavior of Ms. Robinson's domestic abuser, CMHA has intentionally discriminated against Ms. Robinson on the basis of sex. CMHA has adversely effected Ms. Robinson's opportunity to rent a dwelling, and denied her the terms, conditions, and privileges of the rental, in violation of the Fair Housing Act and Ohio Civil Rights Act. By adopting a policy and/or practice of denying the victims of domestic violence transfers, while allowing for transfers in other situations, CMHA has engaged in a practice that has a disparate impact on women. Because the great majority of domestic violence victims are women, this policy and/or practice discriminates on the basis of sex, also in violation of the Fair Housing Act and Ohio Civil Rights Act.

### B. Plaintiff Is Suffering Irreparable Harm

Numerous courts have found that the potential loss of subsidized housing is an irreparable harm for which injunctive relief is appropriate.[32] As the 11th Circuit explained in *Gresham*:

> Several reasons explain why housing discrimination results in irreparable injury.

---

[30] *Id.*

[31] Copy of the Consent Decree attached as Exhibit M.

[32] *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1424 (11th Cir. 1984); *Bolthouse v. Continental Wingate Co., Inc.*, 656 F.Supp. 620, 628-29 (W.D.Mich. 1987); *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F.Supp. 709, 719 (D. Ga. 1974); *Owens v. Housing Authority of City of Stamford*, 394 F.Supp. 1267, 1271 (D. Conn. 1975).

> First, a person who is discriminated against in the search for housing cannot remain in limbo while a court resolves the matter. He or she must find housing elsewhere, and once that housing is found . . . it becomes difficult to disrupt new friendships and other community ties by uprooting oneself again.[33]

Furthermore, in Fair Housing cases, courts have found that equitable relief is available where there is a violation of statute, and that a traditional show of irreparable harm is not required to grant a preliminary injunction.[34]

Plaintiff is suffering and will continue to suffer irreparable harm. She is homeless and cannot afford another home while this matter is pending. Ms. Robinson is forced to stay in overcrowded conditions with family and friends. Her only other option would be to return home where her abuser can find her. She cannot be expected to risk her own safety and the safety of her children.

### C. Harm to Others

The harm suffered by Plaintiff far outweighs any harm suffered by Defendant or any other party if the Court grants a temporary restraining order and/or preliminary injunction. Preliminary injunctive relief should issue when injury to the applicant is immediate, certain and great if denied, while loss or injury to the opposing party will be comparatively small and insignificant if granted.[35]

The harm to Plaintiff is irreparable and substantial in that she is currently homeless and will remain so unless a transfer is given. On the other hand, Defendant will suffer no harm. CMHA has over 5000 units and much turnover as tenants come and go. Pursuant to its ACOP, all CMHA is required to do is offer Ms. Robinson a choice of three suitable available units. An order against Defendant will require only that Defendant follow the law and its own ACOP.

---

[33] 730 F.2d at 1424.
[34] *Cousins v. Bray*, 297 F.Supp.2d 1027, 1041 (S.D. Ohio 2003); *Epicenter of Steubenville, Inc. v. City of Steubenville*, 924 F.Supp. 845, 852 (S.D. Ohio 1996).
[35] *Friendship Materials*, 679 F.2d at 105; *In re DeLorean*, 775 F.2d at 1229.

### D. Public Interest

Protecting the victims of domestic violence is indisputably in the public interest. The U.S. Housing Act requires public housing agencies to "maintain the project in a decent, safe, and sanitary condition."[36] The very purpose of the U.S. Housing Act is to prove decent, safe, and sanitary housing for lower income families.[37] How can families like Ms. Robinson's be safe if CMHA refuses to transfer them to available units after their safety and lives are threatened by domestic violence?

The public interest is not served by allowing public housing authorities to ignore the significant danger faced by domestic violence victims. In the Public Housing Guidebook, HUD has urged housing authorities like CMHA to develop transfer policies for victims of domestic violence: "a special transfer policy would assist victims, who are seeking to flee their abusers, in accessing and maintaining stable housing."[38] CMHA has refused to adopt a transfer policy for domestic violence victims.

> Furthermore the Violence Against Women Act (VAWA) requires that:
>
> Each public housing agency shall utilize leases which . . .
> (5) require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause, and that an incident or incidents of actual or threatened domestic violence, dating violence, or stalking will not be construed as a serious or repeated violation of the lease by the victim or threatened victim of that violence and will not be good cause for terminating the tenancy or <u>occupancy rights</u> of the victim of such violence.[39]

CMHA's refusal to grant Ms. Robinson the occupancy rights granted to other tenants, specifically

---

[36] 42 U.S.C.A. § 1437d(l)(3).
[37] *Rivera v. Reading Housing Authority*, 819 F.Supp. 1323 (E.D.Pa.1993), *aff'd* 8 F.3d 961.
[38] Copy of Part 7: Domestic Violence attached as Exhibit N, pp.218-219.
[39] 42 U.S.C. § 1437d(l)(5) (emphasis added). While VAWA does not grant a private right of action to victims, it expresses the public policy that public housing authorities should protect victims and grant them the same "occupancy rights" as all other tenants.

a transfer to a safe location, is contrary to public policy, as stated in the U.S. Housing Act, the HUD Public Housing Guidebook, and VAWA. This Court will serve the public interest by enjoining Defendant from breaking the law. There is no competing public interest at stake in this case.

### III. CONCLUSION

Consideration of the four relevant factors establishes that Plaintiff meets the requirements for the issuance of a temporary restraining order and/or a preliminary injunction. Plaintiff is suffering irreparable harm, while there is no harm to Defendant. Plaintiff is likely to succeed on the merits of this case because Defendant is violating federal and state law, and its own ACOP. Finally, the public interest will be served by protecting the victims of domestic violence.

Civil Rule 65(C) permits a court to fix an amount for bond or security to be paid before an order becomes effective, but the actual requirement of a bond is discretionary with the trial judge.[40] In this case, Plaintiff will continue to pay her rent. Bond should be set at $0.00 or a nominal amount of $1.00. Courts have concluded that a zero bond or a nominal bond may be appropriate under Civil Rule 65(C), considering the public interest or public policy issues in a case, particularly where requiring security would effectively deny access to judicial review.[41]

A temporary restraining order and preliminary injunctive relief should be granted. The Court should order Defendant to immediately offer Ms. Robinson three suitable scattered site public housing units.

---

[40] *Roth v. Bank of Commonwealth*, 583 F.2d 527, 539 (6th Cir.1978); *Aluminum Workers Intern. v. Consolidated Alum. Corp.*, 696 F.2d 437, 446 (6th Cir.1982); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir.1982); *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 816 (6th Cir.1954); *Americans United v. City of Grand Rapids*, 784 F.Supp. 403, 412 (W.D.Mich.1990).

[41] *See Crowley v. Local No. 82, Furniture and Piano Moving*, 679 F.2d 978, 1000 (1st Cir.1982) (no bond required in suits to enforce important federal rights or public interests), *rev'd on other grounds*, 467 U.S. 526 (1984); *Greenpeace, Inc., at al., v. Waste Technologies Industries, et al.*, 1993 WL 128732 (N.D. Ohio); *People ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir.1985) (requiring security would effectively deny access to judicial review).

Respectfully submitted,

*/s/ Nicholas J. DiNardo*
Nicholas J. DiNardo (0069544)
Lucia Christopher (0081979)
Attorneys for Plaintiff
Legal Aid Society of Southwest Ohio
215 East 9th Street, Suite 500
Cincinnati, Ohio 45202
(513) 241-9400; (513) 241-1187 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of this motion and the Complaint previously filed with the court was served on Joy Gazaway, Attorney for Defendant, Cincinnati Metropolitan Housing Authority, 16 W. Central Parkway, Cincinnati, Ohio 45202 by first class mail, on this 7th day of April, 2008.

*/s/ Nicholas J. DiNardo*
Nicholas J. DiNardo
Attorney at Law