UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| **YOLAUNDA ROBINSON** | : | **CASE NO. 1:08-CV-238** |
| Plaintiff, | : | Judge Michael R. Barrett |
| vs. | : | |
| | : | |
| **CINCINNATI METROPOLITAN HOUSING AUTHORITY** | : | **ORDER** |
| | : | |
| | : | |

**I.      INTRODUCTION**

This matter is before the Court on Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. # 6).  Defendant has responded (Doc. # 9) and Plaintiff has replied (Doc. # 10).

The Parties came before the Court on April 22, 2008 for a hearing on the motion for a preliminary injunction.  After having heard the Parties and being otherwise advised, the Court finds the following.

**II.     FACTUAL BACKGROUND**

The basic facts that are relevant to this pending motion are undisputed.  Yolaunda Robinson is a tenant of the Cincinnati Metropolitan Housing Authority ("CMHA") in a scattered site single family public housing unit.  A scattered site dwelling is a single family home that is

1

rented through the CMHA.  Until recently, she lived at the same location with her two children.  She still pays rent and utilities for this unit.  However, she has not lived there since January 14, 2008, because at that time she was subjected to significant and traumatic abuse by her former boyfriend.

Plaintiff was in a relationship with Charles E. Davis for several months.  He became abusive after they had been dating for about three months.  The abuse continued to escalate to the point that Plaintiff broke off the relationship on December 25, 2007.  A few weeks later on January 14, 2008, Mr. Davis came to Plaintiff's home, forced his way in and severely beat her.  This attack caused significant injuries to Plaintiff and also caused property damage to the home.  Since that time, Plaintiff and her children have been living with friends and family.  Plaintiff and her children are afraid to return to the residence because Mr. Davis has threatened to come back and kill Plaintiff.

Mr. Davis lives with his mother and daughter a half a block down the street from the Plaintiff.  Ms. Robinson and Mr. Davis have never been married, have not co-habitated and do not have children together.

Ms. Robinson, the Plaintiff, has filed a police report and was granted an *ex parte* Civil Stalking and Sexually Oriented Offense Protection Order.  It is believed that Mr. Davis is still at large and currently criminal charges are pending against him.

As a result of the abuse and the threat to her life, Plaintiff has requested that the CMHA transfer her to another unit or scattered site dwelling so that Mr. Davis will not be able to find her and will not be able to continue to be a threat to her well being.  CMHA has declined to transfer Plaintiff because its policy does not provide for transfers on the basis that a tenant has been a

victim of domestic violence. CMHA claims that the only exception for transfers based upon the tenant being a victim of a crime is that which allows transfers for victims of federal hate crimes, as is defined under the federal hate crimes statute. CMHA has not taken any steps to evict Plaintiff from her home or otherwise affect her federal housing subsidy. Her unit is still her unit.

The provision of the CMHA Admissions and Continued Occupancy Policy ("ACOP") that is at issue in this case is the "Section V - Transfer Policy." Under the specific provision for "Types of Transfers, Category 1 Administrative Transfers," the ACOP provides that mandatory transfers are to be made "to provide housing options to residents who are victims of federal hate crimes[14] or extreme harassment: . . ." CMHA ACOP, Section V -Transfer Policy, B(2), July, 2007. The federal hate crime statue encompasses crimes motivated by the victim's race, color, religion or national origin. 18 U.S.C. § 245(b)(2). Footnote 14 provides: "Following consultation with Housing Opportunities Made Equal that such is appropriate."

Footnote 14 indicated in the above quote carries significance in this case. The significance is not due to the footnote's content, however, but rather is due to its placement. Plaintiff contends that the footnote placement indicates a break in the sentence so that "extreme harassment" should be read as separate and distinct from "federal hate crimes." Plaintiff claims that the "extreme harassment" portion is not inextricably tied to federal hate crimes statute.

The result is, Plaintiff argues, that domestic violence would be included as "extreme harassment," which would warrant a mandatory transfer under the ACOP. Domestic violence affects women more than men, therefore, to deny Plaintiff's request, because it is based on domestic violence, is unconstitutional gender discrimination in violation the Fair Housing Act

and the Ohio Civil Rights Act.

Defendant contends that the footnote placement is of no significance and it does not break up the sentence. Defendant claims, therefore, that "extreme harassment" does not include domestic violence and is meant to be part of the reference to the federal hate crimes statute so that mandatory transfers are only for extreme harassment based upon race, color, religion or national origin.

Due to the CMHA's denial of her request for a transfer, Ms. Robinson filed her motion for a temporary restraining order and preliminary injunction. Therein, she claimed that the CMHA's policy violated the Fair Housing Act because it discriminated against her on the basis of her gender.

**III.    ANALYSIS**

This matter is before the court on a motion for a preliminary injunction. It is well settled that when deciding whether to issue a temporary restraining order or preliminary injunction, four factors are considered:

1). The plaintiff's likelihood of success on the merits;
2). Whether the injunction will save plaintiff from irreparable injury;
3). Whether the injunction would harm persons or parties other than the plaintiff; and
4). Whether the public interest would be served by the injunction.

*Connection Distributing Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998).

The consideration of these factors is a balancing test so that each element need not be met in order to support a preliminary injunction. *Dayton Area Visually Impaired Persons, Inc. v. Fischer*, 70 F.3d 1474, 1481 (6th Cir. 1995). Each factor and the Parties' respective arguments

relating thereto will be addressed in turn.

        A.      The Plaintiff's Likelihood of Success on the Merits

Plaintiff's argument is that the CMHA's policy to deny transfer requests by victims of domestic violence impermissibly discriminates on the basis of gender because domestic violence overwhelmingly affects women more than men. Therefore, Plaintiff argues that because her request derives from domestic violence, she is being denied a transfer on the basis of her gender. Plaintiff claims that this is in violation of the Fair Housing Act ("FHA") which makes it unlawful to "make unavailable or deny a dwelling to any person because of sex . . . and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex. 42 U.S.C. § 3604(a),(b). Plaintiff makes the same claims as to the Ohio Civil Rights Act. Plaintiff alternatively argues that by the same conduct, CMHA has engaged in a practice that has a disparate impact on women.

Defendant responds that the whole of the CMHA's policy and procedure is gender neutral, including its transfer policy. The same restrictions apply to transfer requests by men as they do to transfer requests by women. Defendant also responds that what Plaintiff cites as legal authority for her position is inapplicable and unpersuasive. The cited authority is based upon cases involving domestic violence victims being evicted or denied other federal housing benefits. Defendant points out that Ms. Robinson has not been evicted and neither has she been denied any other federal housing benefits following the domestic violence incident. Thus, Defendant argues that the law does not support Plaintiff's position, and it is not likely that she would be successful

on the merits.

Consideration of the first factor of the preliminary injunction balancing test leads to the conclusion that Plaintiff's success on the merits is not likely. The law applicable to public housing does not require that the public housing authority ("PHA") provide for mandatory transfers for victims of domestic violence. The case law relied upon by Plaintiff addressed whether a tenant who is a victim of domestic violence can be evicted because she was a victim of domestic violence. *Bouley v. Young Sabourin,* 394 F. Supp 2d 675, 678 (D.C. Vermont March 10, 2005); *Lewis v. North End Village*, Case No. 2:07-cv-10757, unreported, (E.D. Mich. 2007); *Warren v. Ypsilanti Housing Commission*, Case No. 4:02-cv-40034, unreported, (E.D. Mich. 2003); *Alvera v. C.B.M. Group*, Case No. 01-857, unreported, (D. Oregon 2001).

This legal authority relied upon by the Plaintiff, address situations where the domestic violence involved the eviction of the victim following the domestic violence. The cases recognized that to evict the women in these situations had the effect of victimizing them twice: first they are subject to abuse and then they are evicted. *Id.*

The courts recognized that this type of a policy had a disproportionate impact on women because domestic abuse affects women more than men and, thus, resulted in unlawful discrimination on the basis of sex. Such discrimination is an unconstitutional violation of the Fair Housing Act which prohibits the denial of housing on the basis of gender. *Id.* Consequently, the PVA's or other landlords were required to reform their policies and either transfer the victims out of the abusive situation or not evict the victim. *Id.*

In the case presently before the Court, the Plaintiff is not being denied housing and she has not been evicted. She is free to return to her home. The case law does not support the

Plaintiff's argument that to deny a transfer request based upon domestic violence is unconstitutional.

Moreover, with the exception of the hate crimes provision, the CMHA policy is neutral on its face. There is nothing in the policy that provides for special, different or more restrictive consideration for victims of domestic violence. Plaintiff has not shown that the CMHA's interpretation and application of its policy is discriminatory.

As quoted earlier, the policy provision at issue states that mandatory transfers are required for victims of federal hate crimes and extreme harassment. Federal hate crimes are those crimes against a person because of his race, color, religion or national origin. 42 U.S.C. 245(b)(2). Essentially, Plaintiff claims that the CMHA's policy is unconstitutional because it treats domestic violence victims, i.e. women, differently from other crime victims because CMHA does not consider domestic violence as extreme harassment. Defendant contends that the policy reads that the extreme harassment term is part of the reference to the federal hate crimes exception, and is not an independent basis for a mandatory transfer either on its face or in application.

When reading the questioned provision, there is nothing that shows a means by way of which the CMHA could discriminate on the basis of a tenant being a victim of domestic violence. Moreover, the evidence supports that the CMHA policy is to limit the application of this provision to those specific instances delineated therein. At the hearing on Plaintiff's motion for a preliminary injunction, the Defendant presented as a witness Ms. Joan Rourke, the Director of Management at CMHA. Ms. Rourke testified that it is the policy of the CMHA to not allow for the transfer of tenants who are victims domestic violence or other crimes, but it does allow transfers for victims of hate crimes and extreme harassment related to hate crimes. (Preliminary

Injunction Hearing Transcript, p. ____).[1]

Ms. Rourke testified to the rationale supporting the limitation of transfer for victims of hate crimes. She stated that the CMHA is responsible for the initial placement of tenants. *Id.* at ___. If the location of the tenant contributed to the occurrence of the hate crime or the harassment, for example the placement of a tenant of one religion in a home surrounded by tenants or home of a different religion. *Id.* at ___. The CMHA believes it has a responsibility in such situations to move the tenant to a location where the same type of hate crime conduct is less likely to occur. *Id.* at ___. In addition, to move the one victimized tenant is considerably more effective than to move an entire street of tenants. *Id.* at ___.

When compared with domestic violence, the initial placement of the tenant is not a causative factor of the domestic violence. *Id.* at ___. Ms. Rourke also testified that the CMHA receives many requests for transfers for a variety of reasons including criminal activity. *Id.* at ___. It is not CMHA's policy to allow transfers neither for victims of crime nor for witnesses to crime. *Id.* at ___.

Contrary to Plaintiff's argument, CMHA's policy is not clear as to whether the policy, as written, allows for transfers for domestic violence under the extreme harassment language. Plaintiff has cited nothing in the policy that defines extreme harassment to include domestic violence and has not produced any other evidence that the term extreme harassment includes domestic violence or any other type of crime. Therefore, the policy is gender neutral and non-discriminatory on its face. The policy neither excludes domestic violence nor includes domestic

---

[1] The official transcript of the preliminary hearing was not available at the time this order was entered. The order will be supplemented once the transcript is completed and accurate citations to the record can be made.

violence as a basis to allow or deny a transfer.

Therefore, as to the first factor of the balancing test for a preliminary injunction, the Court finds that the Plaintiff's success on the merits is not likely.

B.      Whether the Injunction Will Save Plaintiff from Irreparable Injury.

The Plaintiff claims that she is suffering irreparable injury due to the loss of her public housing.  She claims that she is homeless and that she cannot afford another home while this matter is pending.  Ms. Robinson believes that it would risk her own safety and that of her children if she were to return to her current CMHA unit.

Defendant responds that Ms. Robinson has not lost any of her benefits.  She has not been evicted, she has not lost her home, and she is still eligible for her housing subsidy.  Defendant also argues that it cannot prevent potential injury that may be caused by the independent act of a third party.

The Court finds that this factor weighs in favor of the Defendant as well.  The CMHA has not denied Ms. Robinson any benefits in that she still has her home and her housing subsidy benefits.  Therefore, the Plaintiff's argument that she is homeless because the CMHA is denying her a transfer is not accurate.  Although the Plaintiff has good reason to seek shelter, the fact is that the Plaintiff is choosing not to return to her home for reasons unrelated to the services provided to her by the CMHA.

C.      Whether the Injunction Would Harm Persons or Parties Other Than
        the Plaintiff.

9

Plaintiff claims that the harm she has or may suffer far outweighs any harm that may be suffered by the CMHA or any other party. She claims that she is homeless and will remain homeless unless she is granted a transfer.

Defendant responds that a requirement to transfer Ms. Robinson would impose a heavy burden on CMHA. To impose upon the CMHA the additional responsibility to protect its tenants from potential criminal activity is beyond the scope of its mission and purpose. To do so would essentially place CMHA in the role of law enforcement and make them a guarantor of their tenants' safety. The balance of this factor weights in favor of the Defendant.

The purpose of the CMHA is to provide decent, safe and sanitary housing. Safe housing refers to structurally safe and free of potential physical dangers, but not as to crime. It is not the responsibility of the housing authority to protect its tenants from all potential crime, including domestic violence. Moreover, if such a responsibility were imposed upon the housing authority, it would create an economic and administrative hardship. More transfers would be requested which would accelerate turnover and increase the costs of repair and maintenance of the units each time a transfer is made. Therefore, in balancing the potential harm to Ms. Robinson and the potential harm to the Defendant, the factors are equal and not decisive.

D.      <u>Whether the Public Interest Would be Served by the Injunction</u>.

Plaintiff argues that it is in the public interest for the CMHA to protect its tenants from domestic violence. Plaintiff argues that to refuse her the occupancy rights granted to other tenants, specifically to transfer to a safe location, is contrary to public policy.

Defendant responds that transferring Ms. Robinson would benefit Ms. Robinson, but

10

would lead to a detrimental effect on the CMHA.  To be required to transfer victims of domestic violence would lead to additional costs and additional administrative responsibilities for which they are not prepared.  Moreover, requiring transfers in these situations would lead to greater turnover and instability in the neighborhoods CMHA serves.  This would be discouraging to private landlords who make their properties available through the voucher programs.

Plaintiff cites to the Violence Against Women Act ("VAWA"), 42 U.S.C. § 1437(d)(1)(5) in support of its public interest argument.  The VAWA provision cited by the Plaintiff provides that public housing agencies shall utilize leases that do not terminate tenancy or occupancy rights of domestic violence victims.

The Court finds that the CMHA does what the VAWA directs: it does not penalize a tenant for being a victim of domestic violence.  It is indisputable that to prevent domestic violence is in the public interest.  It is also indisputable that to provide public housing is in the public interest.  However, it is not within the realm of responsibility of the CMHA to insure its tenants against potential harm by third parties over which it has no control.  Therefore, the fourth balancing factor weighs in favor of the Defendant.

**IV      CONCLUSION**

Accordingly, the Plaintiff has not demonstrated a substantial likelihood of success on the merits of her claim that the CMHA's policy is discriminatory on the basis of gender or that it violates the FHA.  In addition, the other factors relevant to the granting of a preliminary injunction weight against the Plaintiff's motion.  The injunction will not save the Plaintiff from losing her home or housing benefits, what she claims as an irreparable injury, because she has not

been evicted and no other benefits have been denied.  An injunction would harm persons other than the Plaintiff because to require a transfer would place a burden on the CMHA that it is not equipped to meet.  The public interest would not be served by a preliminary injunction because, although it might help the Plaintiff, it would be interfere with the CMHA's ability to provide public housing.[1]

The Court is not insensitive to the Plaintiff's situation and the turmoil she has faced due to the violent acts of Mr. Davis.  Unfortunately, however, the status of the law does not require the CMHA to grant her a transfer on the basis of a threat of future domestic violence.

**WHEREFORE**, it is ordered that the Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. # 6) be **DENIED**.

This _29_ day of April, 2008.

*/s/ Michael R. Barrett*

**MICHAEL R. BARRETT, JUDGE**

---

2  The Court observes that, although it believes that transfers for victims of domestic violence are not required by the CMHA's non-discriminatory policy nor required under the law, the CMHA is encouraged to consider implementations to its policy to allow for such the transfers, when possible, to assist the tenant in these circumstances.  In support hereof, the Court references the CMHA to the Public Housing Occupancy Guidebook, Part 7, Chapter 19 Domestic Violence, p. 216 and the directives contained therein.  The Court further observes that Ms. Rourke testified that the CMHA does not allow transfers for witness of crime for their protection from an alleged perpetrator. (Preliminary Hearing Transcript, p. ___)  The Court encourages the CMHA to re-examine its policy on this point as well.